UNITED STATES *v.* CONTINENTAL LEMANIA, INC. (No. 3631) [1]

---

United States Court of Customs and Patent Appeals, October 30, 1933

*Charles D. Lawrence*, Assistant Attorney General (*Peter A. Abeles* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellee.

[Oral argument October 12, 1933, by Mr. Folks and Mr. Isenschmid]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT Associate Judges

BLAND, Judge, delivered the opinion of the court:

In this case the United States has appealed from the judgment of the United States Customs Court, Second Division, which judgment sustained the claims of appellee, importer, under paragraph 367, Tariff Act of 1922, as to the proper dutiable classification of certain movements for timekeeping devices.

The importations involved are covered by two protests. The appraiser, in his answer to one of the protests, stated that the merchandise was "desk, boudoir, auto or traveling clocks, with movements having 15 jewels in the escapement", and duty was levied thereon by the collector at $4 each and 45 per centum ad valorem under paragraph 368 of the Tariff Act of 1922. In the answer to the other protest the appraiser stated that the merchandise consisted of what is known as "desk, boudoir, auto or traveling clocks, with clock movements. Also movements for desk, boudoir, etc., clocks, all having more than four jewels in the escapement, not watch movements", and duty was levied thereon by the collector at $4 each and 45 per centum ad valorem under said paragraph 368. The appraiser, in the answers to both protests, further stated that his return was in accordance with the Department's instructions in T.D. 42307.

The importations at bar are represented by Exhibits 1, 2, 3, 4 and 5. Each of Exhibits 1 and 3 consists of a base, to which is attached an ornamental upright projection, on which projection is attached the dial, hands, and timekeeping movement. Exhibit 1 has a 21-line, 15-jewel movement and an alarm. Exhibit 3 is listed as a 14-line, 15-jewel movement with enamel face, and is without alarm. Exhibit 2 is the metal portion of what is described as a traveling timepiece. To the movement is attached the metal framework for holding it in some kind of so-called traveling case or container. The movement is listed as 21-line, 15-jewels, and is an eight-day movement with alarm inside the movement case. It is stem-winding and stem-setting, the winding and setting apparatus being located at the bottom of the movement, that is to say, below the numeral "6" on the dial. Exhibit 4 is a 19-line, 15-jewel, eight-day timepiece without alarm, contained in a supporting frame consisting of an agate plate supported by a metal rack, so that the timepiece, when stationary, is supported on the principle of a tripod. Exhibit 5 consists of a 14-line, 15-jewel movement without permanent case, invoiced as a wristlet watch movement. Exhibits 1, 3 and 4 have, on the back, projecting handles or keys for winding and for resetting. Exposed also on the outside of exhibits 1, 3 and 4 are protruding posts for moving or setting the regulating means of the timepieces. Exhibit 5 is designed to wind and set from the back. In none of the movements of the exhibits is there a front plate. All of them, in lieu of a front plate, have what are called bridges, such as are found in watch movements.

The pertinent paragraphs are as follows:

PAR. 367. Watch movements, whether imported in cases or otherwise, assembled or knocked down, if having less than seven jewels, 75 cents each; having seven and not more than eleven jewels, $1.25 each; having more than eleven and not more than fifteen jewels, $2 each; having more than fifteen and not more than seventeen jewels, unadjusted, $2.75 each; having seventeen jewels and adjusted to temperature, $3.50 each; having seventeen jewels and adjusted to three positions,

$4.75 each; having seventeen jewels and adjusted to five positions, $6.50 each; having more than seventeen jewels, adjusted or unadjusted, $10.75 each; watchcases and parts of watches, chronometers, box or ship, and parts thereof, 45 per centum ad valorem; all jewels for use in the manufacture of watches, clocks, meters, or compasses, 10 per centum ad valorem; enameled dials for watches or other instruments, 3 cents per dial and 45 per centum ad valorem: *Provided*, That all watch and clock dials, whether attached to movements or not, when imported shall have indelibly painted or printed thereon the name of the country of origin, and that all watch movements and plates, assembled or knocked down, and cases shall have the name of the manufacturer or purchaser and the country of manufacture cut, engraved, or die sunk conspicuously and indelibly on the plate of the movement and the inside of the case, respectively, and the movement and plates shall also have marked thereon by one of the methods indicated the number of jewels and adjustments, said numbers to be expressed both in words and in Arabic numerals, and if the movement is not adjusted, the word "unadjusted" shall be marked thereon by one of the methods indicated, and none of the aforesaid articles shall be delivered to the importer unless marked in exact conformity to this direction: *Provided further*, That only the number of the jewels which serve a mechanical purpose as frictional bearings shall be marked as herein provided.

PAR. 368. Clocks and clock movements, including lever clock movements, and clockwork mechanisms, cased or uncased, whether imported complete or in parts, * * * any of the foregoing whether wholly or partly complete or knocked down (in which condition they shall be appraised at the valuation of the complete article); cases and casings for clockwork mechanisms imported separately; all the foregoing, 45 per centum ad valorem; and in addition thereto, upon any of the foregoing articles or parts thereof, having jewels, but not more than two jewels, in the escapement, $1 each; having more than two but not more than four jewels, $2 each; having more than four jewels, $4 each; if without jewels in the escapement and valued at not over $1.10 each, 35 cents each; valued at more than $1.10 and not more than $2.25 each, 70 cents each; valued at more than $2.25 but not more than $5 each, $1 each; valued at more than $5 but not more than $10 each, $2 each; valued at more than $10 each, $3 each; all parts and materials for use in any of the foregoing if imported separately, and not specially provided for, 50 per centum ad valorem: *Provided*, That all dials, whether attached to movements or not, when imported, shall have indelibly painted, printed, or stamped thereon the name of the country of origin, and the front or back plate of the movement frame of any of the foregoing when imported shall have the name of the maker or purchaser, the name of the country where manufactured, and the number of jewels, if any, indelibly stamped on the most visible part of same; * * *.

The lower court held all the movements of the importation to be watch movements and dutiable under paragraph 367, the amount of duty depending on the number of jewels provided for in the paragraph, and held that the cases or frames in which the movements were contained were dutiable at the rate of 45 per centum ad valorem under said paragraph 368 as clock cases, which holding fully sustained the claims in appellee's protests.

The court below regarded the only question in the case as being, were the movements of the importations watch movements for tariff duty purposes, and made the following findings of fact:

(1) That watch movements are made in watch factories by watchmakers out of watch material with the aid of specially designed tools capable of manipulating fine and delicately constructed watch parts, whereas clock movements are made in clock factories by clock makers with tools and equipment which are incapable of making watch movements.

(2) That the imported movements were made in a watch factory in Switzerland out of watch materials.

(3) That watch movements are constructed in an entirely different manner from clock movements in the following particulars:

(a) Typical clock movements have no jewels whatever, save in the case of level clock movements. The latter have jewels in the balance and escapement only, whereas watch movements usually have jewels in the *train* as well as in the escapement.

(b) Clock movements are usually adjusted to run only in a vertical position, but never more than in two positions, vertical and horizontal; whereas watch movements are adjusted to run in any position.

(c) In typical clock movements the impulse of the escapement is communicated to a pendulum rather than to a balance wheel as in watch movements. While the later lever clock movements have a balance-wheel escapement—a feature borrowed from watch movements—such escapement is on the top or back of the plates, whereas in watch movements the entire escapement is between the back plate and the bridges.

(d) Clock movements have front and back plates set far apart, whereas watch movements have back plates and in lieu of front plates have a system of *bridges*, the plate and bridges being set close together to secure compactness.

(e) Clock movements have only about half as many parts as have watch movements, the clock parts being of much coarser construction.

(4) That the imported movements possess all of the features above mentioned as characteristic of watch movements.

(5) That there are in the trade and commerce of this country certain pocket watches with movements fully as large as those in the present importation; that some of such movements have back, instead of the usual stem winding and setting devices, and some also have incorporated therein alarm mechanisms.

We have carefully examined the entire record, which is voluminous, and conclude that the essential parts of the findings of fact are abundantly supported by the great weight of the evidence. The testimony on which the findings of fact were based consists chiefly of the testimony of two witnesses, who were watchmakers and who testified for the importer as to the detailed differences between watch and clock movements, and three witnesses for the Government on substantially the same subject matter.

It is shown in the testimony that American manufacturers of watches, who, at one time, manufactured no clocks or clock movements, later became engaged in manufacturing merchandise substantially the same as that at bar, and the testimony of the Government's witnesses to the effect that there was no distinguishing differences between clock movements and watch movements, we think, was

largely influenced by the new characteristics of the new line of time-keeping devices. If merchandise of the character of that at bar had been left out of consideration in the testimony of the witnesses and the generally recognized distinctions between watch movements and clock movements only had been considered, it is fair to conclude that there would have been little, if any, difference of opinion among the witnesses.

The importer contends here that in the involved tariff act, as in other tariff acts, Congress sought to definitely segregate, for duty purposes, watch movements from clock movements and to segregate for duty purposes watches from any container in which they might be imported. Importer argues that the test as to whether a movement in a given timepiece is a watch movement or a clock movement is to be determined by its physical characteristics or mechanical construction and the kind of institution in which it is made; that if a watch movement used in a clock case becomes a clock movement, a watch movement in any other kind of a case except a watchcase would cease to be a watch movement, contrary to the decided cases. See *United States* v. *Wanamaker*, 20 C.C.P.A. (Customs) 367, T.D. 46132.

It is further argued by the importer that the findings of fact by the court below are not only supported by the evidence, but that the legislative history of the provisions here involved and similar preceding tariff enactments, and all of the rulings of the courts, support the basic conclusion in the findings of fact that there are distinct mechanical differences between clock movements and watch movements, and that Congress recognized such differences in the particular legislation involved herein.

The position of the Government here is, as we understand it, first, that some of the findings of fact are not justified by the evidence nor by a consideration of the context of the paragraphs involved. The Government points out certain claimed inaccuracies in the findings of fact but relies mainly upon other contentions. The main contention of the Government is to the effect that commercial designation is not involved in this suit, and that the common meaning of watch movements is that they are movements used in watches, and that clock movements are movements used in clocks; that the method of construction or the material out of which the movements are made is not a material or determining factor, and that the question of use should determine the classification of the importation. It points out that a watch (evidently a complete watch) is most often defined by the dictionaries and lexicographical authorities as being a pocket mechanism and that the importations are not designed for pocket use; that Exhibits 1, 2, 3, and 4, as well as the movements contained therein, not only are not designed to be encased for pocket use, but are incapable of being so

encased by reason of their size or by reason of the winding or setting mechanism, and that Exhibit 5, being a back-winding movement, cannot be regarded as a watch movement for that reason, since it contends that back winders are no longer used.

We think the record clearly shows that there is a mechanical difference between watch movements and clock movements, and that Congress was cognizant of this difference when it enacted the two competing provisions in controversy. The weight of the evidence fairly supports the lower court's findings of material facts. Some of the findings may be stated so broadly as to be slightly inaccurate as to minor details, but they are correct in all material respects.

Without discussing all of the reasons which bring us to the conclusion, we think it clear that Congress in the Tariff Act of 1922 intended to treat and did treat watch movements as entirely distinct from clock movements for duty purposes. A comparison of the context of the two paragraphs shows unmistakably that Congress fully recognized that there was such a distinction between watch movements and clock movements as to require that each must be specially treated in the tariff act.

It is interesting to note that in the watch paragraph is found the following language:

PAR. 367. * * * or die sunk conspicuously and indelibly *on the plate* of the movement and the inside of the case * * * (italics ours),

while in the clock paragraph is found the following:

PAR. 368. * * * *and the front or back plate of the movement frame* of any of the foregoing when imported shall have the name of the maker or purchaser * * *. (Italics ours.)

This would seem to indicate that Congress recognized the structural differences between watch and clock movements referred to by the court in finding (3) (d).

Since Congress, for the reasons above stated, treated the two kinds of movements separately, it is hardly supposable that it could have contemplated that a watch movement might be built into some kind of frame and then properly be classed as a clock movement, or that the case and movement together should be regarded as a clock. If the case and movement in each of the encased 'articles before us were to be looked upon as a clock, we see no escape from the conclusion that the movements of the articles should be regarded as clock movements for tariff purposes.

We do not think a desk, boudoir, or other stationary timepiece containing the movement of a watch such as is provided for in paragraph 367 was intended to be regarded as a clock for duty purposes under paragraph 368. For this reason, we conclude that the completed articles at bar, although they may be loosely called clocks, are not

clocks within the meaning of paragraph 368 and that the movements contained therein are not clock movements.

In *United States* v. *Wanamaker, supra*, it was urged that the hand bag and watch involved constituted an entirety in chief value of leather and that it should be so assessed. The court found that it was not an entirety and that the hand bag and the watch had no natural affinity or relation. The watch movement was there held to be separately dutiable. The question as to what classification the watch movement would have taken if the merchandise had been an entirety was not decided. In a long line of decisions, among them *United States* v. *European Watch Co.*, 11 Ct. Cust. Appls. 363, T.D. 59160, it is definitely settled that watch movements and watchcases had by judicial determination, as well as by departmental direction, attained a settled definite status as separate entities for tariff purposes prior to the act of 1913. See *Racine* v. *United States*, 107 Fed. 111; *Chicago Watchman's Clockworks* v. *United States*, 4 Ct. Cust. Appls. 105, T.D. 33376; *United States* v. *Strasburger & Co.*, 9 Ct. Cust. Appls. 138, T.D. 37982. If this was true then, it is certainly true under the act of 1922. Since a watch movement is separable from a watchcase for duty purposes, it is difficult to understand why a watch movement in a clock case would not also be separately dutiable for tariff purposes. In the last statement we are assuming for the sake of argument that the cases in which the watch movements at bar were placed could be regarded as clock cases. The cases will be referred to later.

We cannot agree with the contention of the Government that the placing of a watch movement in a case which is in the form of a clock case (except as modifications may be required for attaching a watch movement) makes the whole a clock, and thus results in making the movement in the so-called clock a clock movement.

As before stated, in determining whether the imported movements are watch movements, the Government contends for the acceptance of certain dictionary definitions which define a *watch* to be a pocket mechanism for keeping time. While this definition may broadly express the general notion of what a watch is, it is too broad and is obviously inaccurate for our purposes here. Moreover, we are not here concerned so much about the definition of a *watch* as we are with *watch movements* and what Congress had in mind when it enacted the watch and clock movement paragraphs. The Government does not dispute that a wrist watch contains a watch movement, and it is not a pocket mechanism at all. Watch movements unquestionably are found, according to the record, in pendant watches, torpedo-boat watches, in canes, umbrellas, pencils, and cigarette and cigar lighters. This court in *United States* v. *Wanamaker, supra*, found that a watch movement was placed in a hand bag. It is also suggested,

in this case, that ordinarily watches with suitable attachments are used as timekeepers in automobiles and in places other than in the pocket or on or about the person. On the other hand, the record shows an instance of a clock being carried around the neck of a watchman. These considerations, which are not only shown by the record but are a matter of common knowledge, indicate that it would be an unsafe rule to adopt the doctrine of use as the controlling factor in the classification of watch movements and clock movements.

It may be argued that such watch movements as are found in bags, canes, etc., are of the kind which are designed for pocket use. This may or may not be true. We think the imported movements at bar belong to that class of timekeeping movements which most generally are carried in the pocket, or on or about the person, and which have been so changed as to fit them for a timekeeping use not on or about the person. The changes made, in our judgment, are not such as to deprive them of their watch-movement character.

The record in this case would seem to suggest that some users of desk, mantle, and other stationary timepieces are demanding that the movements contained therein have the compactness, fineness of quality, and workmanship that is found in watches. It is possible that watch movements may supplant clock movements in most stationary timekeeping devices. It will then be time for Congress to speak authoritatively on the subject. Under the act of 1922 we feel sure that it treated clock movements and watch movements as wholly different articles for tariff-duty purposes.

For the foregoing reasons we are of the opinion that the watch movements involved should have been separately assessed in accordance with the finding of the court below.

Now, we next consider the so-called clock cases. The importer and the Government both claimed that they were clock cases, and the court below so found. Neither the importer nor the Government seems to be in a position to complain of such ruling. The importer did not appeal from such finding, and the Government contends that such classification was proper. It may be suggested that if the movements are not clock movements and the whole article is not a clock, the case cannot be a clock case within the meaning of the provision. Under the circumstances of this record, we are not called upon to determine this question, and the finding of the court below, sustaining the classification of the collector, in that particular, must be affirmed, without our express approval or disapproval of such classification.

The judgment of the United States Customs Court is *affirmed.*